REQUESTED BY: Dear Senator:
You have requested the opinion of this office as to whether LB 4 is constitutional and whether it would be binding upon future legislatures. LB 4 in pertinent part provides that the Legislature may not exceed the previous year's budget by more than 5 percent unless the Legislature by four-fifths vote suspends the budget limitation. You have asked specifically whether this four-fifths vote requirement is proper.
Article III, section 13 of the Nebraska Constitution provides in pertinent part as follows:
 ". . . No bill shall be passed by the Legislature unless by the assent of a majority of all members elected and the yeas and nays on the question of final passage of any bill shall be entered upon the journal."
Although the Nebraska Supreme Court has never been presented with the question of whether the Legislature may by statute restrict itself and future legislatures by requiring a larger-than-majority vote for passage of some act where the same is not required by the Constitution, an almost identical case was found from the State of Alabama.
Tayloe v. Davis, 212 Ala. 232, 102 So. 433 (1924), dealt with a situation in which the two houses of the Alabama Legislature had passed an act which in part provided that budget bills could only be amended by a two-thirds vote. In holding that section of the act to be void, the court reviewed the various sections of their Constitution which prescribed a vote other than a majority vote and concluded as follows:
 "Viewing the Constitution as a whole, we are impressed that in spirit it recognizes the fundamental principal that a democracy functions by rule of the majority. Wherein a different rule of legislative action is deemed best, such rule is set forth in the Constitution. Section 63, requiring a majority of each house assembled ready for business, to pass a bill, and § 64, requiring the same majority to amend a pending bill, mean to fix and prescribe the vote necessary to pass a bill or adopt an amendment thereto, except as otherwise fixed in the Constitution."
This same reasoning would appear to be very applicable to the situation at hand. Article III, section 13, states the general rule that a majority is required to pass a bill. Many other sections state the exceptions to this general rule, i.e. Article III, section 10; Article III, section 22; Article III, section 27; Article IV, section 7; Article IV, section 15; and Article IV, section 27. It therefore appears implicit in our Constitution that a majority of the members elected to the Legislature is all that is required to pass legislation, except in those situations wherein the Constitution specifically provides otherwise.
This same reasoning was also employed in Heiskell v.City of Baltimore, 4 A. 116 (Md. 1886). Although the factual situation in that case was considerably different, much of the reasoning and language is particularly applicable. In that case, the city council had attempted to require the presence of two-thirds of the members to constitute a quorum. State enabling legislation was silent on the question of how many are required for a quorum, although under common law only a majority was required. In striking down this two-thirds requirement, the court stated as follows:
 ". . . No municipal corporation can either enlarge or diminish its own powers. That is more than the legislature of the state can do for itself.
 The latter derives all its powers from the constitution, and the former all its powers from the legislature. By the consent of the legal body, which is the majority, either may refrain from exercising any power it rightfully has, but that is all. But a majority, being the legal body, cannot delegate its rights and powers to a minority. Such would be the practical effect of this two-third rule. It would give to one more than a third of the whole number of councilmen elected the power to prevent the passage of every ordinance, and thus entirely block the business of the council." (Emphasis added.)
The proposed legislation herein is an attempt by the Legislature to diminish its own power. By doing so, however, under the reasoning of the case discussed above, it could be argued that the majority are delegating undue rights and powers to a small minority, since ten legislators could prohibit a budget bill from being passed which increases the budget by more than 5 percent.
It could also be argued that this bill is in conflict with Article III, section 22, wherein it is provided that [E]ach Legislature shall make appropriations for the expenses of the Government.' LB 4, by its terms, would not only affect this Legislature, but also all future legislatures, and a future Legislature could be impaired in its constitutional mandate to `make appropriations for the expenses of the Government.'
In conclusion, this office believes that if LB 4 were passed in its present form, it would be difficult to defend constitutionally for all of the reasons expressed above. It is our opinion that a constitutional amendment would be required to impose a more restrictive vote requirement upon the Legislature in its function of appropriating funds for the expense of government.